IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



CONSTANCE L. MUWWAKIL-DAVIS,

    Plaintiff,

v.                        Civil Action No. 3:10cv563

WILMINGTON FINANCE, INC.,
et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court following the Court's *sua sponte* Order (Docket No. 8) to show cause why this removed action should not be remanded to State court for lack of subject jurisdiction.

## STATEMENT OF FACTS

In June 2005, Muwwakil-Davis ("Plaintiff"), a resident of Virginia, obtained a $108,000 refinance mortgage loan (the "Loan") from AIG FSB, through its affiliate Wilmington Finance (collectively "Defendants"). (Comp. at ¶¶ 1, 5.) The Defendants are both residents of Delaware. (Notice of Removal at ¶ 8.) The fees associated with the loan totaled $7,872. (Memorandum in Support of Motion to Dismiss ("Def.'s Mem.") at 2.)

In June 2007, the Defendants entered into a Supervisory

Agreement ("Agreement") with the Office of Thrift Supervision ("OTS"), a result of what Plaintiff alleges, in conclusory fashion, to be wrongdoing discovered by OTS. (Comp. at ¶ 6-7.) The Agreement required the Defendants to "(i) provid[e] loans to borrowers on affordable terms and/or (ii) reimburse fees" if the borrower met certain conditions. (Comp., Ex. B at § 2(a).) Under OTS regulations and the terms of the Agreement, the terms of the Plan of Implementation are confidential. (Def.'s Mem. at 2.)

On October 22, 2007, the Defendants offered to refund $3,415 in fees charged to the Plaintiff. (Id. at 3.) The Defendants' offer required the Plaintiff to execute a release and confidentiality agreement as a precondition to the refund. (Id. at 3.) The Plaintiff refused to accept the offer. (Comp. at ¶ 8.) On December 3, 2008, the Defendants offered to refund an additional $4,457 with the same precondition required by the first offer. (Def.'s Mem. at 3.) The Plaintiff again refused to accept the offer. (Comp. at ¶ 8.) The Plaintiff asked OTS what wrongdoing had been discovered and additionally sought the same information through the Freedom of Information Act. However, she was unsuccessful in both instances. (Id. at ¶ 9.)

Thereafter, the Plaintiff filed a Bill For Information And Damages in the Circuit Court of the City of Richmond. (See generally the Bill.) In the Bill, the Plaintiff seeks damages,

2

but the Bill does not outline the nature or the extent of any damage, except to say that Plaintiff believes that she suffered a "substantial" financial loss. At the foot of the Bill, the Plaintiff, in conclusory fashion states that she seeks damages "in an amount that will fairly compensate her based on the extent of such wrongdoing...not to exceed $400,000" and "punitive damages" in an amount up to and including $350,000, the legal limit in Virginia. (Id. at Conclusion.) The Defendants filed a Notice of Removal to this Court based on diversity of citizenship. On September 27, 2010, the Court issued an Order requiring the Defendants to show cause why the action should not be remanded to state court for lack of subject matter jurisdiction because it appeared questionable whether the amount in controversy actually exceeds $75,000.

## DISCUSSION

An action is properly removed to this Court for diversity of citizenship if the amount in controversy exceeds $75,000 and the parties are citizens of different States. 28 U.S.C. § 1332(a)(1). "The burden of demonstrating jurisdiction resides with 'the party seeking removal.'" Barbour v. Int'l Union, 594 F.3d 315, 326 (4th Cir. 2010) (quoting Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994)). It is unquestioned that the parties are citizens of different states;

however, the amount in controversy is unclear. As the party seeking removal, the Defendants bear the burden of demonstrating that the amount in controversy exceeds $75,000.[1] See id.

The Defendants argue that they may rely on the Plaintiff's good-faith claim for specific monetary damages in the Bill to carry their burden, citing Vaughn v. Dixon, 2009 WL 2913617, *2 (N.D.W.Va. 2009) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938)) ("Often, [the defendant's] burden is settled without argument because a plaintiff's good-faith claim for specific monetary damages in the complaint binds the defendant."). The Defendants point out that the Bill claims $400,000 in compensatory damages and $350,000 in punitive damages. Thus, the Defendants hinge their argument in support of subject matter jurisdiction exclusively on what they characterize as the Plaintiff's belief that her damages exceed the jurisdictional threshold. (Defendants' Memorandum in Support of Subject Matter Jurisdiction ("Def.'s Mem. of SMJ") at 3-4.)[2]

---

[1] The Defendants note that the Plaintiff did not object to the Notice of Removal. (Reply Memorandum in Support of Subject Matter Jurisdiction at 2-3.) This fact is immaterial because the issue is one of subject matter jurisdiction, and "the court may...insist that the jurisdictional facts be established or the case be dismissed...." McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

[2] The Defendants twist the meaning of the Plaintiff's argument by selectively quoting the Plaintiff's Response to Defendants'

4

It is correct that generally a defendant may rely on the complaint to establish the requisite jurisdictional amount. See Choice Hotels Int'l, Inc. v. Shiv Hospitality, L.L.C., 491 F.3d 171, 176 (4th Cir. 2007) ("The black letter rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed in good faith." (internal quotation marks omitted)). However, the Bill here does not specifically state the amount in controversy. Instead, the Bill posits facts that show damages in the amount of $7,872 ($3,415 plus $4,457). The Bill then refers to the Plaintiff's potential loss as "substantial," an adjective that accurately could be applied to the $7,872 specific sum presented in the Bill.

Moreover, the Plaintiff's responsive brief accurately reflects that the Bill presents "a conditional claim for damages based on what the bill of discovery might reveal." (Resp. Mem. of SMJ at 2.) Finally, the brief recites that Plaintiff has filed "another lawsuit pending in state court -- Case No. CL09-

---

Memorandum Against Remand ("Resp. Mem. of SMJ"): "[T]he Plaintiff...further states that if the claims are proven 'the amount at controversy would exceed $75,000.'" (Def.'s Mem. of SMJ at 3 (emphasis in original).) However, the Plaintiff actually states: "[T]he defendants have not borne their burden to show that, if they disclosed what they did to the plaintiff, the amount at controversy would exceed $75,000. (Resp. Mem. of SMJ at 3 (emphasis added).)

5

1464-4 – seeking damages for greater than $75,000." (Id.) The responsive brief concludes by specifically stating that she does not know the extent of the wrong suffered but that her damages "might exceed $75,000...." (Id. at 2-3 (emphasis added).) In sum, the Plaintiff confesses that, if the text of the Bill is taken as a whole, the damages sought are unspecified.

The Defendants argue that, even if damages are unspecified, remand "is not justified unless it appears 'to a legal certainty that the claim is really for less than the jurisdictional amount.'" (Id. at 2 (quoting Horton, 367 U.S. at 353).) The Defendants' reliance on Horton is misplaced. In Horton, the respondent filed suit in federal court, asserting that subject matter jurisdiction was proper because of diversity of citizenship and specifically alleging, in the complaint, an amount in controversy in excess of the $10,000 statutory minimum. Horton, 367 U.S. at 349. In response, the petitioner moved to dismiss the federal suit, alleging that the amount in controversy was actually $1,050.00, notwithstanding what was alleged in the Complaint. Id. at 350. The Court stated that, in circumstances where the complaint was filed in federal court and specifically alleged that the amount in controversy exceeded the statutory limit,

> [t]he general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears

6

> or is in some way shown that the amount stated in the complaint is not claimed "in good faith." In deciding this question of good faith we have said that it "must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."

Id. at 353 (quoting St. Paul Mercury Indem., 303 U.S. at 289). This action is factually distinguishable for two reasons. First, this suit was removed to federal court by the Defendants, whereas Horton's strong presumption of proper jurisdiction is applied where the plaintiff originally filed the action in federal court. Second, viewed as a whole, it is obvious that the Bill in this case seeks damages which realistically could not approach $75,000, notwithstanding the conclusory allegations at the end of the Complaint.

As the Defendants accurately point out, the amount of punitive damages asserted by a plaintiff also is to be considered in determining the amount in controversy. However, here the Bill alleges no facts which would support an award of punitive damages. Instead, the Bill ends with a conclusory prayer for punitive damages. That is not sufficient to qualify the punitive damages mentioned as properly countable in determining the amount in controversy. Indeed, to allow such a conclusory allegation to animate diversity jurisdiction would open the door to untold mischief. For example, such a conclusory allegation would bring into federal court cases in

7

which the only plausible damage is a $1,000 property damage in an automobile accident case in which the plaintiff recites a conclusory prayer for $350,000 in punitive damages. The Defendants have offered no decisional support for using a conclusory assertion of punitive damages, untethered to any pleaded facts warranting punitive damages, as the predicate for federal jurisdiction. Nor could the Court locate any such authority.

Furthermore, if ever that approach had been sanctioned, it could not now survive the rules set by <u>Bell Atlantic v. Twombly</u>, 127 S.Ct. 1995 (2007), and <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009). Certainly, if any aspect of a complaint must meet the plausibility requirements set by those decisions, it would be the requisites for subject matter jurisdiction. Indeed, at least two district courts have recognized as much. <u>Sanchez v. United States</u>, 707 F. Supp.2d 216, 226 (D.P.R. 2010) ("[T]he Court finds that Plaintiff has the burden of establishing that subject matter jurisdiction exists within the parameters of the 'plausibility' standard established by *Twombly* and *Iqbal* when confronted with Defendant's 12(b)(1) motion to dismiss."); <u>RHJ Medical Center, Inc. v. City of DuBois</u>, 2010 WL 4959879 (W.D. Pa. Dec. 7, 2010) (quoting same in <u>Sanchez</u>).

Here, the Bill does not assert a sum that satisfies the requisite amount in controversy in plausible terms. And, when

asked to stand and deliver on the amount of her damages, the best the Plaintiff could say is that the damages might exceed $75,000. That simply does not meet the plausibility standard. Nor have Defendants shown that the Plaintiff's case satisfies the amount in controversy requirement for diversity jurisdiction.

The Fourth Circuit has not decided what specific burden a removing defendant must carry where, as here, the damages are unspecified and realistically could not exceed $75,000. Rota v. Consolidation Coal Co., 1999 WL 183873, *1 n.4 (4th Cir. Apr. 5, 1999) (unpublished table opinion) (noting that the proper standard for assessing the value of an unspecified damage claim is subject to debate and declining to adopt a position). The precise nature of a defendant's burden does not need to be decided here, however, because the Defendants have offered no proof that the amount in controversy exceeds $75,000. In such circumstances, the court has stated that "'[i]f federal jurisdiction is doubtful, a remand [to state court] is necessary.'" Barbour, 594 F.3d at 326 (quoting Mulcahey, 29 F.3d at 151) (alterations in original). Here, the federal jurisdiction is, at least, doubtful.

## CONCLUSION

For the reasons set forth above, it has not been shown that this Court has subject matter jurisdiction; and, therefore, this action will be remanded to State court.

It is so ORDERED.

                                        /s/ REP
                        Robert E. Payne
                        Senior United States District Judge

Richmond, Division
Date: January 6, 2011